**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| **UMBRA, LLC**<br>**1705 BROADWAY STREET**<br>**BUFFALO, NEW YORK 14212,** | **COMPLAINT** |
|           **Plaintiff,** | **JURY TRIAL DEMANDED** |
|    **v.** | **Civ. No.:** |
| **IQ ACCESSORIES, INC.**<br>**10799 BREN ROAD EAST**<br>**EDEN PRAIRIE, MINNESOTA 55343,** | |
| **TARGET BRANDS, INC.**<br>**1000 NICOLLET MALL**<br>**MINNEAPOLIS, MINNESOTA 55403,** | |
| **and** | |
| **TARGET CORPORATION**<br>**1000 NICOLLET MALL**<br>**MINNEAPOLIS, MINNESOTA 55403,** | |
|           **Defendants.** | |

_____

Plaintiff, UMBRA, LLC ("UMBRA"), by and through its attorneys, Damon Morey, LLP and Simpson & Simpson, PLLC, for its Complaint against Defendants IQ Accessories, Inc. ("IQA"), Target Brands, Inc. and Target Corporation (collectively, the "Target Companies"), alleges:

## <u>NATURE OF THIS ACTION</u>

1.    This action seeks injunctive relief and damages against Defendants for trade dress infringement under the Lanham Act § 43(a), 15 U.S.C. § 1125(a); patent infringement under the Patent Laws of the United States, 35 U.S.C. § 101 *et seq.*, including 35 U.S.C. §§ 271, 281, 283, 284 and 289; and substantially related claims arising under New York common and statutory law.

## THE PARTIES

2.      UMBRA is a New York limited liability company having its principal place of business at the address set forth in the caption above.

3.      UMBRA is the worldwide leader in original, casual, contemporary, affordable design for the home. Founded in 1979, the company's products are available at over 25,000 retailers in more than 75 countries. UMBRA designs and manufactures products for every room, including picture frames, window treatments, kitchenware, tabletop accessories, bathroom accessories, decorative hardware, furniture, wallpaper and garbage cans.

4.      Upon information and belief, IQA is a Minnesota corporation having its principal place of business at the address set forth in the caption above.

5.      Upon information and belief IQA has manufactured for the Target Companies a garbage can of the kind described in this Complaint.

6.      Upon information and belief, Target Brands, Inc. and Target Corporation are Minnesota corporations having their principal place of business at the address set forth in the caption above.

7.      Upon information and belief, the Target Companies purchase garbage cans (the "infringing product") for re-sale in the United States from IQA.

## JURISDICTION AND VENUE

8.      Subject matter jurisdiction is conferred on this Court pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a), 1338(b) and 1367(a).

9.      This Court has personal jurisdiction over the Defendants.

10.     Upon information and belief, Defendants regularly do and/or transact and/or solicit business in this State and District; contract to supply goods in this jurisdiction; advertise and market infringing goods within this jurisdiction; derive substantial revenues from the sale of

goods in this jurisdiction; know or expect their actions to have consequences in this jurisdiction; and derive substantial revenue from interstate or international commerce through online sales to customers and otherwise.

11.     Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

## UMBRA AND ITS PATENTS

12.     Over a period of 30 years, UMBRA has maintained and developed, at considerable expense, in the United States and worldwide, valuable patents and trade dress, a valuable trade name, a reputation for excellence, and valuable relationships with retailers and customers.

13.     In order to develop and maintain these assets and associated good will, UMBRA has invested substantial amounts of money, time and other resources.

14.     On or about April 23, 1997 UMBRA filed a design patent application in the United States Patent and Trademark Office claiming the ornamental design for a garbage can. The patent issued as United States Design Patent No. Des. 399,622 (the '622 Patent) on October 13, 1998.

15.     A true and correct copy of the '622 Patent is annexed as **Exhibit 1**.

16.     UMBRA owns the '622 Patent and, as such, has the right to sue and recover for past, present and future infringement of the '622 Patent and to obtain the relief claimed in this complaint.

17.     On or about May 13, 1998 UMBRA filed a design patent application in the United States Patent and Trademark Office claiming the ornamental design for a top portion of a garbage can. The patent issued as United States Design Patent No. Des. 404,867 (the '867 Patent) on January 26, 1999.

18.     A true and correct copy of the '867 Patent is annexed as **Exhibit 2**.

19.     UMBRA owns the '867 Patent and, as such, has the right to sue and recover for past, present and future infringement of the '867 Patent and to obtain the relief claimed in this complaint.

## FACTS COMMON TO ALL CLAIMS

20.     UMBRA has advertised, offered for sale and sold throughout the United States and elsewhere a garbage can commonly known as and marketed as "GARBINO"® pursuant to the '622 and '867 Patents.

21.     Upon information and belief, Defendants make, advertise, offer for sale, distribute and sell a knock-off copy of UMBRA's GARBINO® garbage can (the "infringing product") throughout the United States and they continue to do so throughout the United States.

22.     On or about February 2, 2009, UMBRA wrote to Defendants (the UMBRA February 2009 Letters) and advised Defendants that UMBRA owned the trade dress embodied in the GARBINO® Garbage Can and owned the '622 and '867 Patents, and requested that the Defendants cease and desist using the trade dress embodied in the infringing product, and the ornamental design embodied in the infringing product.

23.     A true and correct copy of the UMBRA February 2009 Letters are annexed as **Exhibit 3**.

24.     Target Brands, Inc. responded to the UMBRA February 2009 Letters on February 9, 2009 (the Target February 2009 Letter) indicating that UMBRA's concerns regarding the copying of UMBRA's GARBINO® Garbage Can had been received and were being forwarded to their vendor.

25.     A true and correct copy of the Target February 2009 Letter is annexed as **Exhibit 4**.

26.     IQA responded to the UMBRA February 2009 Letters on February 25, 2009 (the IQA February 2009 Letter) indicating that it was of the opinion that it did not infringe UMBRA's trade dress rights and design patent rights by it advertising, manufacture, distribution, offer for sale and sale of the infringing product.

27.     A true and correct copy of the IQA February 2009 Letter is annexed as **Exhibit 5**.

28.     Upon information and belief, Defendants have not discontinued use of the trade dress embodied in the infringing product and the ornamental design embodied in the infringing product and continue to infringe UMBRA's trade dress embodied in the GARBINO® Garbage Can and ornamental design embodied in the '622 and '867 Patents.

<u>**FIRST CLAIM**</u>
<u>**PATENT INFRINGEMENT**</u>

29.     UMBRA re-alleges Paragraphs 1-28 as if fully set forth herein.

30.     Upon information and belief, Defendants have infringed and continue to infringe the '622 and '867 Patents by making, using, offering to sell, selling, promoting and importing, in this District and elsewhere in the United States, goods that use or embody the patented inventions.

31.     Upon information and belief, Defendants have also contributed to the infringement of the '622 and '867 Patents, and/or actively induced others to infringe the '622 and '867 Patents, in this District and elsewhere in the United States.

32.     Defendants are engaged in activity directed toward the infringement, and/or inducing the infringement and/or contributing to the infringement of the '622 and '867 Patents because the infringing product are substantially the same in the eye of an ordinary observer, giving such attention as a purchaser usually gives, as the visual appearance as a whole of the garbage can design in the '622 Patent and the top portion of the garbage can design in the '867 Patent, and the infringing product copy particular design features shown in the '622 and '867

Patents that depart conspicuously from the prior art, and therefore the infringing product are naturally more likely to be regarded as deceptively similar to the claimed design and thus infringing.

33.     The portions of the designs shown in the '622 and '867 Patents which depart conspicuously from the prior art include but are not limited to: a continuously undulating rim; oppositely disposed oval shaped handle holes; a tapering cross section from a larger diameter at the top of the garbage can to a smaller diameter at the bottom, in a slightly curved or non-linear manner; and, a circular cross section at any given height, except the top portion about the undulating rim.

34.     At all relevant times, Defendants have had knowledge of the '622 and '867 Patents, as UMBRA has given notice of its patent rights in the '622 and '867 Patents by virtue of the fact that, upon information and belief, each garbage can distributed and sold by UMBRA since at least as early as October 13, 1998 bears the notice, "US Pat. No. Des. 399,622" and since at least as early as January 26, 1999 bears the notice, "US Pat. No. Des. 404,867".

35.     Defendants have actual knowledge of the '622 and '867 Patents since at least as early as February 2, 2009.

36.     Upon information and belief, the Defendants' infringement of the '622 and '867 Patents have been willful and deliberate entitling UMBRA to increase damages under 35 U.S.C. § 284, to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285 and to the Defendants' total profits from the sale of the infringing product under 35 U.S.C. § 289.

37.     UMBRA is entitled to recover from Defendants the damages sustained by UMBRA resulting from Defendants' wrongful acts in an amount subject to proof at trial.

38.     As a result of such conduct, UMBRA has suffered, and unless such acts and practices are enjoined by this Court, will continue to suffer immediate and irreparable harm, and

UMBRA is entitled to injunctive relief to enjoin Defendants' acts and prevent further violation of its rights. UMBRA has no remedy at law.

**SECOND CLAIM**
**TRADE DRESS INFRINGEMENT**

39.     UMBRA re-alleges Paragraphs 1-38 as if fully set forth herein.

40.     This Count arises under 15 U.S.C. § 1125(a).

41.     The trade dress embodied in the GARBINO® garbage can includes but is not limited to: a continuously undulating rim; oppositely disposed oval shaped handle holes; a tapering cross section from a larger diameter at the top of the garbage can to a smaller diameter at the bottom, in a slightly curved or non-linear manner; and, a circular cross section at any given height, except the top portion about the undulating rim.

42.     UMBRA has invested substantial sums in marketing and advertising the trade dress for the GARBINO® garbage can thereby resulting in a high volume of sales.

43.     The GARBINO® garbage can and its associated trade dress have received a variety of unsolicited media coverage indicating the enthusiasm and loyalty of the product's customers.

44.     As a result of UMBRA's use, sales, advertising and promoting of its trade dress for the GARBINO® garbage can, its dress is distinctive to UMBRA and their product and has acquired secondary meaning.

45.     As a result of UMBRA's use, sales, advertising and promoting of its trade dress for the GARBINO® garbage can for an extended length of time, its dress is strong.

46.     The infringing product includes: a continuously undulating rim; oppositely disposed oval shaped handle holes; a tapering cross section from a larger diameter at the top of the garbage can to a smaller diameter at the bottom, in a slightly curved or non-linear manner; and, a circular cross section at any given height, except the top portion about the undulating rim.

47.    The trade dress embodied in the GARBINO® garbage can and the infringing product have a high degree of similarity.

48.    The GARBINO® garbage can and the infringing product are sold in close competitive proximity.

49.    The Defendants use of its trade dress is likely to cause confusion, mistake or deception as to the affiliation, connection or association of the Defendants with UMBRA or as to the organization, sponsorship, or approval of the infringing product by UMBRA.

50.    As a result of such conduct, UMBRA has suffered, and unless such acts and practices are enjoined by this Court, will continue to suffer immediate and irreparable harm, and UMBRA is entitled to injunctive relief to enjoin Defendants' acts and prevent further violation of its rights. UMBRA has no remedy at law.

51.    UMBRA is entitled to recover from Defendants the damages sustained by UMBRA resulting from Defendants' wrongful acts in an amount subject to proof at trial.

## THIRD CLAIM
## TRADE DRESS DILUTION

52.    UMBRA re-alleges Paragraphs 1-51 as if fully set forth herein.

53.    UMBRA's trade dress is famous within the meaning of 15 U.S.C. § 1125(c) and became famous before Defendants first used their infringing design.

54.    UMBRA's trade dress is advertised and used extensively throughout the United States and is highly recognizable by the trade and the consuming public.

55.    Defendants are engaged in a commercial use of their infringing design.

56.    Defendants' activities are disparaging and damaging, and they lessen the distinctiveness of UMBRA's trade dress through, at the very least, tarnishing and blurring the UMBRA trade dress.

57.     As a result of such conduct, UMBRA has suffered, and unless such acts and practices are enjoined by this Court, will continue to suffer immediate and irreparable harm, and UMBRA is entitled to injunctive relief to enjoin Defendants' acts and prevent further violation of its rights. UMBRA has no remedy at law.

## FOURTH CLAIM
## COMMON LAW UNFAIR COMPETITION

58.     UMBRA re-alleges Paragraphs 1-57 as if fully set forth herein.

59.     The acts of Defendants described above constitute unfair competition.

60.     Defendants have profited and, unless such acts and practices are enjoined by this Court, will continue to profit by misappropriating the time, money, skill and labors UMBRA has invested in establishing its reputation and good will.

61.     As a result of such conduct, UMBRA has suffered, and unless such acts and practices are enjoined by this Court, will continue to suffer immediate and irreparable harm, and UMBRA is entitled to injunctive relief to enjoin Defendants' acts and prevent further violation of its rights. UMBRA has no remedy at law.

62.     UMBRA is entitled to recover from Defendants the damages sustained by UMBRA resulting from Defendants' wrongful acts in an amount subject to proof at trial.

## FIFTH CLAIM
## VIOLATION OF N.Y. GENERAL BUSINESS LAW § 360-l

63.     UMBRA re-alleges Paragraphs 1-62 as if fully set forth herein.

64.     The foregoing acts of Defendants are likely to injure UMBRA's business reputation and/or dilute, tarnish or blur the distinctive quality of UMBRA's trade dress and as a result, Defendants have violated N.Y. General Business Law § 360-l.

65.     As a result of such conduct, UMBRA has suffered, and unless such acts and practices are enjoined by this Court, will continue to suffer immediate and irreparable harm, and

UMBRA is entitled to injunctive relief to enjoin Defendants' acts and prevent further violation of its rights. UMBRA has no remedy at law.

## SIXTH CLAIM
## UNJUST ENRICHMENT

66.     UMBRA re-alleges Paragraphs 1-65 as if fully set forth herein.

67.     Defendants' conduct constitutes, and will constitute in the future, unjust enrichment to Defendants in many respects, including amounts received through sales.

68.     Unless UMBRA is compensated for any ill-gotten gains, Defendants will be unjustly enriched as a result of their inequitable conduct.

## JURY DEMAND

69.     Pursuant to Fed.R.Civ.P. 38(b), UMBRA demands a jury trial of all issues triable of right by jury.

## REQUEST FOR RELIEF

**WHEREFORE**, UMBRA respectfully requests that this Court enter a judgment and appropriate orders in favor of UMBRA and against the Defendants, their officers, agents, employees, and attorneys, and on all persons, partnerships, or corporations in active concert or participation with the Defendants, or any other person, partnership, or corporation acting on behalf of the Defendant, for the following relief:

A.      A declaration that the '622 and '867 Patents are not invalid;

B.      An adjudication that Defendants have infringed, continue to infringe, contributed to infringement of and/or actively induced others to infringe UMBRA's trade dress and the '622 and '867 Patents.

C.      A determination that Defendants' acts indicate willful infringement and a refusal to change its course of action despite its knowledge of UMBRA's trade dress and the '622 and '867 Patents.

D.      A permanent injunction preventing any use in any way connected with UMBRA's trade dress, or any dress or design element confusingly similar thereto;

E.      A permanent injunction pursuant to 35 U.S.C. § 283, enjoining and restraining further acts of (1) infringement, (2) contributory infringement, and (3) active inducement to infringe with respect to the claims of the '622 and '867 Patents;

F.      An order requiring the Defendants to account for and pay over to UMBRA all gains, profits, and advances derived by them from the activities complained of;

G.      An order requiring the Defendants to pay to UMBRA an amount equal to all actual damages suffered by UMBRA from the activities complained of;

H.      An order directing that Defendants' infringing garbage cans be destroyed in a manner directed by the Court;

I.      For infringement of the '622 and '867 Patents, an order requiring Defendants to pay to UMBRA an amount equal to its total profits pursuant to 35 U.S.C. § 289;

J.      For willful and wanton conduct, an order requiring Defendants to pay to UMBRA an amount such that total damages awarded are equal to three (3) times the award of actual damages and profits otherwise awarded for the activities complained of pursuant to 15 U.S.C. § 1117 and 35 U.S.C. § 284;

K.      An award for costs of this action, including discovery costs, and reasonable attorney fees and for interest on the final judgment according to 28 U.S.C. § 1961(a); and

L.      Such other and further relief this Court deems just and proper under the circumstances.

Dated: Buffalo, New York
            December 29, 2009


  /s/ Randolph C. Oppenheimer           
Randolph C. Oppenheimer, Esq.

DAMON MOREY LLP
Lead Counsel for Plaintiff
Avant Building - Suite 1200
200 Delaware Avenue
Buffalo, New York 14202-2150
T: (716) 856-5500
F: (716) 856-5510
roppenheimer@damonmorey.com

and

Robert C. Atkinson, Esq.
SIMPSON & SIMPSON, PLLC
Co-Counsel for Plaintiff
5555 Main Street
Williamsville, New York 14221
T: (716) 626-1564
F: (716) 626-0366
ratkinson@idealawyers.com

#1387646

# Exhibit 1

US00D399622S

# United States Patent [19]

## Rashid

[11] **Patent Number:** **Des. 399,622**

[45] **Date of Patent:** ✳✳**Oct. 13, 1998**

[54] **GARBAGE CAN**

[75] Inventor: **Karim Rashid**, New York, N.Y.

[73] Assignee: **Umbra U.S.A., Inc.**, Buffalo, N.Y.

[**] Term: **14 Years**

[21] Appl. No.: **70,881**

[22] Filed: **Apr. 23, 1997**

[51] **LOC (6) Cl.** ...................................................... **09-09**
[52] **U.S. Cl.** ................................................................ **D34/1**
[58] **Field of Search** ............................... D34/1, 5–9, 10;
220/908, 909; 248/95, 97, 99

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 328,101 | 7/1992 | Rorke | D34/1 |
| D. 381,159 | 7/1997 | Hampton | D34/1 |
| D. 387,531 | 12/1997 | Tisbo et al. | D34/1 |

*Primary Examiner*—Alan P. Douglas
*Assistant Examiner*—Robin V. Taylor
*Attorney, Agent, or Firm*—Ostrolenk, Faber, Gerb & Soffen, LLP

[57] **CLAIM**

The ornamental design for a garbage can, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of a first side of a garbage can showing the new design;
FIG. **2** is a front view thereof, the back view being a mirror image thereof;
FIG. **3** is a right side view thereof, the left side view being a mirror image thereof;
FIG. **4** is a top view thereof;
FIG. **5** is a bottom view thereof; and,
FIG. **6** is a section view along 6—6 of FIG. 3.

**1 Claim, 3 Drawing Sheets**





FIG.  1



FIG.  2



FIG. 3

FIG. 6



# FIG. 4



# FIG. 5

# Exhibit 2

US00D404867S

# United States Patent [19]

## Rashid

| | |
|---|---|
| [11] | **Patent Number:** **Des. 404,867** |
| [45] | **Date of Patent:** **\*\*Jan. 26, 1999** |

[54] **TOP PORTION OF A GARBAGE CAN**

[75] Inventor: **Karim Rashid**, New York, N.Y.

[73] Assignee: **Umbra USA, Inc.**, Buffalo, N.Y.

[**] Term: **14 Years**

[21] Appl. No.: **88,388**

[22] Filed: **May 13, 1998**

**Related U.S. Application Data**

[62] Division of Ser. No. 70,881, Apr. 23, 1997.

[51] **LOC (6) Cl.** ........................................ **09-09**
[52] **U.S. Cl.** ................................... **D34/1; D34/10**
[58] **Field of Search** ................................. D34/1, 5–7, 9,
                D34/10; 220/908, 909, 910, 911; 248/95

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| D. 328,101 | 7/1992 | Rorke | ........................................ D34/1 |
| D. 381,159 | 7/1997 | Hampton | .................................... D34/1 |
| D. 387,531 | 12/1997 | Tisbo et al. | ............................... D34/1 |

*Primary Examiner*—Holly Baynham
*Assistant Examiner*—Robin V. Taylor
*Attorney, Agent, or Firm*—Ostrolenk, Faber, Gerb & Soffen, LLP

[57] **CLAIM**

The ornamental design for a top portion of a garbage can, as shown and described.

**DESCRIPTION**

FIG. 1 is a perpspective view of a first side of a top portion of a garbage can, showing the new design;
FIG. 2 is a front view thereof, the back view being a mirror image thereof;
FIG. 3 is a right side view thereof, the left side view being a mirror image thereof;
FIG. 4 is a top view thereof;
FIG. 5 is a bottom view thereof; and,
FIG. 6 is a section view along 6—6 of FIG. 3.
The broken line showing is for illustrative purposes only and forms no part of the claimed design.

**1 Claim, 3 Drawing Sheets**





FIG.  1



FIG.  2



FIG. 3

FIG. 6

**U.S. Patent**          Jan. 26, 1999          Sheet 3 of 3          **Des. 404,867**



# FIG. 4



# FIG. 5

Exhibit 3

# SIMPSON & SIMPSON, PLLC

PATENTS, TRADEMARKS, COPYRIGHTS,
COMPUTER LAW, LICENSING & RELATED MATTERS

ROBERT P. SIMPSON *
ELLEN SWARTZ SIMPSON+

C. RICHARD LOHRMAN**
ROBERT C. ATKINSON**
ANDREW E. McLAUGHLIN**

\* Also admitted in Connecticut, Florida and before the
United States Patent and Trademark Office

+ Also admitted in Florida, Certified Public Accountant

\*\* Also admitted before the United States Patent and
Trademark Office

5555 MAIN STREET
WILLIAMSVILLE, NEW YORK 14221
WWW.IDEALAWYERS.COM

TELEPHONE: (716) 626-1564
FACSIMILE: (716) 626-0366

WRITER'S E-MAIL: RATKINSON@IDEALAWYERS.COM

OF COUNSEL

MICHAEL L. DUNN**
THOMAS J. COLSON **

REGISTERED PATENT AGENTS

C. PAUL MALISZEWSKI, P.E.
KURT R. DENNISTON

SCIENTIST

KRISTA M. KOVACS



February 2, 2009

Target Corporation
Target Brands, Inc.
1000 Nicollet Mall
Minneapolis, Minnesota 55403

Sent by Express Mail
Label No. EM 331722151 US

EM331722151US

RE:   **Infringement of United States Design Patent Nos. D399,622 and D404,867 by
Target's TRASH CAN bearing UPC Code 8 72197 60192 2
Trade Dress Infringement of Umbra's GARBINO® Trash Can
Our Ref No.: 1078.UMBI.152US**

Dear Sirs:

Our firm represents Umbra, LLC in relation to intellectual property matters.  We have recently discovered that your company is selling a product entitled TRASH CAN and bearing the UPC Code 8 72197 60192 2.  We enclose images of your product herebelow for your reference.



Target Corporation
Target Brands, Inc.
Our Ref. No.: 1078.UMBI:152US
February 2, 2009
Page 2 of 3



Our client owns United States Design Patent Nos. D399,622 (the '622 patent) and D404,867 (the '867 patent) for inventions entitled, GARBAGE CAN and TOP PORTION OF A GARBAGE CAN, respectively.  Please be advised that the manufacture, use, offer for sale, sale and/or importation of the TRASH CAN product infringes both the '622 patent and the '867 patent. We believe the manufacture, use and/or sale of the TRASH CAN product also infringes Umbra's trade dress rights in its GARBINO® product, sold under the '622 patent and the '867 patent. We also enclose a photograph of our client's GARBINO® product next to Target's TRASH CAN product herebelow for your reference.

Target Corporation
Target Brands, Inc.
Our Ref. No.: 1078.UMBI:152US
February 2, 2009
Page 3 of 3



We hereby demand that you (1) immediately cease and desist from any and all manufacture, use, offer for sale, sale or importation of the TRASH CAN product; (2) immediately recall all TRASH CAN products from all Target stores; (3) destroy all existing inventory of TRASH CAN products; (4) confirm to us in writing that you have done the foregoing; (5) provide an accounting of all sales and profits of the TRASH CAN product, and disgorge all profits; and, (6) provide a list of all manufacturers and/or distributors of the TRASH CAN product. In the event that you fail to do so within fourteen (14) days, our client is prepared to pursue its legal and equitable remedies against you, including seeking preliminary and permanent injunctive relief, monetary damages including punitive damages for willful infringement, and attorneys' fees, in connection with this matter.

Nothing in this letter is intended or shall be construed to constitute an express or implied waiver of any rights or remedies which our client may possess in connection with this matter, all of which are hereby expressly reserved.

This letter is to put you on clear notice of our client's expectations to enable you to take steps that will avoid litigation over our client's intellectual property rights.

Very truly yours,

Robert C. Atkinson

Enclosures
RCA\

# SIMPSON & SIMPSON, PLLC

PATENTS, TRADEMARKS, COPYRIGHTS,
COMPUTER LAW, LICENSING & RELATED MATTERS

ROBERT P. SIMPSON *
ELLEN SWARTZ SIMPSON+

C. RICHARD LOHRMAN**
ROBERT C. ATKINSON**
ANDREW E. MCLAUGHLIN**

\*   Also admitted in Connecticut, Florida and before the
United States Patent and Trademark Office

\+   Also admitted in Florida, Certified Public Accountant

\*\*  Also admitted before the United States Patent and
Trademark Office

5555 MAIN STREET
WILLIAMSVILLE, NEW YORK 14221
WWW.IDEALAWYERS.COM

TELEPHONE: (716) 626-1564
FACSIMILE:  (716) 626-0366

WRITER'S E-MAIL: RATKINSON@IDEALAWYERS.COM

OF COUNSEL

MICHAEL L. DUNN**
THOMAS J. COLSON **

REGISTERED PATENT AGENTS

C. PAUL MALISZEWSKI, P.E.
KURT R. DENNISTON

SCIENTIST

KRISTA M. KOVACS

February 2, 2009

IQ Accessories, Inc.
10799 Bren Road East
Eden Prairie, Minnesota 55343

**Sent by Express Mail
Label No. EM 330543627 US**



**EM330543627US**

RE:   **Infringement of United States Design Patent Nos. D399,622 and D404,867 by
IQ Accessories' TRASH CAN bearing UPC Code 8 72197 60192 2
Trade Dress Infringement of Umbra's GARBINO® Trash Can
Our Ref No.: 1078.UMBI:153US**

Dear Sirs:

Our firm represents Umbra, LLC in relation to intellectual property matters. We have recently
discovered that your company is selling and/or distributing a product entitled TRASH CAN and
bearing the UPC Code 8 72197 60192 2. We enclose images of your product herebelow for your
reference.



IQ Accessories, Inc.
Our Ref. No.: 1078.UMBI:153US
February 2, 2009
Page 2 of 3



Our client owns United States Design Patent Nos. D399,622 (the '622 patent) and D404,867 (the '867 patent) for inventions entitled, GARBAGE CAN and TOP PORTION OF A GARBAGE CAN, respectively.  Please be advised that the manufacture, use, offer for sale, sale and/or importation of the TRASH CAN product infringes both the '622 patent and the '867 patent. We believe the manufacture, use and/or sale of the TRASH CAN product also infringes Umbra's trade dress rights in its GARBINO® product, sold under the '622 patent and the '867 patent. We also enclose a photograph of our client's GARBINO® product next to Target's TRASH CAN product herebelow for your reference.

IQ Accessories, Inc.
Our Ref. No.: 1078.UMBI:153US
February 2, 2009
Page 3 of 3



We hereby demand that you (1) immediately cease and desist from any and all manufacture, use, offer for sale, sale or importation of the TRASH CAN product; (2) immediately recall all TRASH CAN products; (3) destroy all existing inventory of TRASH CAN products; (4) confirm to us in writing that you have done the foregoing; (5) provide an accounting of all sales and profits of the TRASH CAN product, and disgorge all profits; and, (6) provide a list of all manufacturers and/or distributors of the TRASH CAN product. In the event that you fail to do so within fourteen (14) days, our client is prepared to pursue its legal and equitable remedies against you, including seeking preliminary and permanent injunctive relief, monetary damages including punitive damages for willful infringement, and attorneys' fees, in connection with this matter.

Nothing in this letter is intended or shall be construed to constitute an express or implied waiver of any rights or remedies which our client may possess in connection with this matter, all of which are hereby expressly reserved.

This letter is to put you on clear notice of our client's expectations to enable you to take steps that will avoid litigation over our client's intellectual property rights.

Very truly yours,

Robert C. Atkinson

Enclosures
RCA\

# Exhibit 4



**TARGET**

**Target Brands, Inc.**
**1000 Nicollet Mall, TPS-3165**
**Minneapolis, MN  55403**

# FAX COVER SHEET

February 9, 2009

Page 1 of 2 Pages

| To: | Company: | Phone: | Fax: |
|---|---|---|---|
| Robert C. Atkinson | Simpson & Simpson, PLLC | 716/626-1564 | 716/626-0366 |

| From: | Company: | Phone: | Fax: |
|---|---|---|---|
| Carolyn Zanick | Target Brands, Inc. | 612/696-6911 | 612/696-3399 |

## MESSAGE

| Please see attached letter. |
|---|

**IF YOU HAVE ANY PROBLEMS WITH OR NEED TO VERIFY THIS TRANSMISSION, PLEASE CALL KATIE AT (612) 696-5298.**

*NOTE: This facsimile contains PRIVILEGED and CONFIDENTIAL information intended only for the use of the specific individual or entity named above.  If you or your employer is not the intended recipient of this facsimile or an employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any unauthorized dissemination or copying of this facsimile or the information contained in it is strictly prohibited.  If you have received this facsimile in error, please immediately notify the person named above by telephone and return the original facsimile to us at the above address via the U.S. Postal Service.  Thank You.*

TBI 783340



**TARGET**

Carolyn R. Zanick
Direct: (612) 696-6911
Fax: (612) 696-3399
Carolyn.Zanick@Target.com

February 9, 2009

*Via Facsimile and U.S. Mail*

Robert C. Atkinson
Simpson & Simpson, PLLC
5555 Main Street
Williamsville, NY 14221

Re:    Target's File No.: 2009-000704
       Your Reference No.: 1078.UMBI:152US
       Umbra, LLC

Dear Mr. Atkinson:

We received your letter on February 4, 2009, regarding Patent Nos. D399,622 and D404,867.

Target is not accustomed to receiving aggressive correspondence from its vendor-partners.  Nonetheless, we are in the process of investigating the matter set forth in your letter.

Best Regards,

Carolyn Zanick
Sr. Claims Paralegal

CRZ:kma

TBI 782482                  1000 Nicollet Mall, TPS-3165, Minneapolis, MN 55403

# Exhibit 5


**Bowman and Brooke** LLP

150 South Fifth Street, Suite 3000
Minneapolis, MN 55402
Phone: 612.339.8682
Fax: 612.672.3200
www.bowmanandbrooke.com

Steven L. Reitenour
Direct: 612.672.3244
Email: steven.reitenour@bowmanandbrooke.com

<u>VIA EMAIL AND U.S. MAIL</u>

<u>**SUBJECT TO FEDERAL RULE OF EVIDENCE 408**</u>

February 25, 2009

Robert C. Atkinson, Esq.
SIMPSON & SIMPSON, PLLC
5555 Main Street
Williamsville, NY 14221

Re: <u>**I.Q. Accessories' TRASH CAN, UPC Code 8 72197 60192 2**</u>

Dear Mr. Atkinson:

As I mentioned when we talked some time ago, our firm represents I.Q. Accessories ("IQA") in various matters. We received your letter dated February 2, 2009, in which you accuse IQA of infringing Umbra, LLC's Design Patent Nos. D399,622 and D404,867 and its purported trade dress.

We have analyzed your claims and determined that IQA does not infringe your client's design patents or unregistered trade dress. And even if your client could overcome its legal hurdles, IQA's one-time sale of a limited number of Trash Cans suggests that this matter is simply not a rational use of either of our client's resources.

1.   <u>**IQA Does Not Infringe Umbra's Design Patents**</u>.

In your letter, you claim that the IQA Trash Can "infringes both the '622 patent and the '867 patent." But a comparison of the IQA Trash Can and the patents-at-issue demonstrates that there is no infringement.

As you know, a design patent protects only the nonfunctional aspects of an ornamental design. *See Arminak & Assocs., Inc. v. Saint-Gobain Calmar, Inc.*, 501 F.3d 1314, 1319 (Fed. Cir. 2007). "If the patented design is primarily functional rather than ornamental, the patent is invalid." *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 238 (Fed. Cir. 1986).

The inventor of the two patents-at-issue, Karim Rashid, has acknowledged that the can depicted in the patents-at-issue is "highly functional." Happenings: Garbino at MoMA, http://www.umbra.com/inspiration/happenings/GarbinoMoMA.html. He even identified some of its "highly functional" features:

::ODMA\PCDOCS\MSP\542074\1

Robert C. Atkinson, Esq.
February 25, 2009
Page 2

> [I]t has handles that are built in and is shaped so that trash goes in
> and out easily. . . .  The scoop top prevented you from touching the
> garbage when picking it up, and the rounded inside double wall
> bottom prevented coffee and other liquids from getting caught in the
> interior.

*Id.*  Given the "highly functional" features of the can, it is doubtful whether either of the patents-at-issue would survive judicial scrutiny.  At a minimum, the features identified by Mr. Rashid would be excluded from any determination as to the scope of the patents-at-issue.

Once a design patent issues, the patented design is defined by "the drawings in the patent, not just one feature of the claimed design."  *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,* 997 F.2d 1444, 1450 (Fed. Cir. 1993).  Moreover, design patents "must be interpreted narrowly as pertaining only to those aesthetic elements which the design patents reveal."  *Tappan Co. v. General Motors Corp.,* 380 F.2d 888, 890 (6th Cir. 1967).

Mr. Rashid has acknowledged that the '622 patent "claims the shape of the rim," which he believes "unduly narrows the scope of the claim."  Reissue Application Declaration By the Inventor, Serial No. 29/131,014, filed Feb. 16, 2001.  Indeed, this is the basis for his reissue application.  The U.S. Patent and Trademark Office ("PTO"), however, has resisted his attempts to broaden the scope of his claim.  His reissue application, filed on October 13, 2000, has been the subject of at least four Office Actions and a series of amendments, and as of today, still has not issued.  The last document in the file wrapper is your client's response to the fourth Office Action, challenging some of the examining attorney's decisions as "wholly inappropriate" and arguing that certain restrictions imposed by the examining attorney "should be withdrawn."  Amendment, "Remarks" at 5, Serial No. 29/131,014, filed Aug. 14, 2008.

The fact that the '622 patent—and the '867 patent, given the virtually identical drawings—"claims the shape of the rim" demonstrates why, among other reasons, the IQA Trash Can does not infringe the patents-at-issue.  The rim on the IQA Trash Can contains a "lip" that extends beyond the vertical walls of the trash can; the rim depicted in the drawings of the patents-at-issue does not contain such a lip.  Interpreting the claims of the patents-at-issue narrowly, they cannot be said to read on the rim on the IQA Trash Can.

There are, however, more obvious differences between the patents-at-issue and the design of the IQA Trash Can, especially the general overall shape of the can that is the subject of the patents-at-issue.  As the PTO examining attorney repeatedly pointed out, the shape and appearance of the can depicted in the reissue application (which is the same can depicted in the patents-at-issue) "is identical in all material respects" to the shape and appearance of the sidewalls of the drinking glass depicted in U.S. D38,248 to Helmer.  *See* Office Action [# 1] ¶ 6, Serial No. 29/131,014, filed Mar. 31, 2003; Office Action [# 2] ¶ 8, filed Nov. 12, 2004; Office Action [# 3] at 4, filed Mar. 10, 2006.  Indeed, it is the "swerving rim [and] flowing curves" that your client touts in its advertisements of the Garbino trash can.  *See, e.g.,* http://www.umbra.com/ustore/product/082857/c060/garbino_can.html.  In contrast, the sidewalls of the IQA Trash Can are almost linear, devoid of the "flowing curves" that characterize the can depicted in the patents-at-issue.

This distinction is crucial, given the Federal Circuit's recent decision regarding design patent infringement.  In *Egyptian Goddess, Inc. v. Swisa, Inc.,* 543 F.3d 665 (Fed. Cir. 2008) (en banc), the Federal Circuit rejected the "point of novelty" test and its refinement, the "non-trivial advance" test, and

Robert C. Atkinson, Esq.
February 25, 2009
Page 3

held that the "ordinary observer" test, as articulated by the U.S. Supreme Court in *Gorham Co. v. White*, 81 U.S. 511 (1871) is "the sole test for determining whether a design patent has been infringed." *Id.* at 678.  Under that test, "infringement will not be found unless the accused article 'embod[ies] the patented design or any colorable imitation thereof.'"  *Egyptian Goddess*, 543 F.3d at 670 (quoting *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1116-17 (Fed. Cir. 1998)).

The Federal Circuit quoted extensively from the *Gorman* case in describing how identical the accused product must be to the design depicted in the patent-at-issue:

> The [Supreme] Court stated that the test of identity of design "must be **sameness of appearance**, and mere difference of lines in the drawing or sketch . . . or slight variances in configuration . . . will not destroy the substantial identity."  Identity of appearance, the Court explained, or "**sameness of effect upon the eye**, is the main test of substantial identity of design"; the two need not be the same "to the eye of an expert," because if that were the test, "[t]here never could be piracy of a patented design, for human ingenuity has never yet produced a design, in all its details, exactly like another, so like, that an expert could not distinguish them."

> The *Gorham* Court then set forth the test that has been cited in many subsequent cases: "[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are **substantially the same**, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

*Id.* (emphasis added, citations omitted).

The Federal Circuit recognized that, "[i]n some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer, as required by *Gorham*." *Id.* at 678.  We believe this is such an instance—no ordinary purchaser would believe that the IQA Trash Can was "substantially the same" as the can depicted in the patents-at-issue, especially after the functional features are eliminated from that design.

But even if a court believed that the patents-at-issue and the IQA Trash Can are not plainly dissimilar, and the court required IQA to produce similar prior art designs (*see id.*), we believe IQA would be able to meet its burden of production.  Just a cursory review of design patents provides a plethora of examples of similar art—both prior and subsequent to the patents-at-issue.  For example, each of the following designs incorporates at least one of the features found on the IQA Trash Can that is not found in the patents-at-issue:

- 1,427,879 to Weinman, Sept. 5, 1922 — discloses a circular waste basket in which the sidewalls are almost linear (similar to the IQA Trash Can), devoid of the "flowing curves" that characterize the can depicted in the patents-at-issue.

Robert C. Atkinson, Esq.
February 25, 2009
Page 4

- D170,138 to Roop, Aug. 4, 1953 — discloses a wastebasket or similar article in which the sidewalls are almost linear (similar to the IQA Trash Can), devoid of the "flowing curves" that characterize the can depicted in the patents-at-issue.

- D400,331 to Rausch, Oct. 27, 1998 — discloses a handled trash basket in which the sidewalls are almost linear (similar to the IQA Trash Can), devoid of the "flowing curves" that characterize the can depicted in the patents-at-issue.

- D412,228 to Diehl, Jul. 20, 1999 — discloses a handled container in which the sidewalls slope in slightly, devoid of the "flowing curves" that characterize the can depicted in the patents-at-issue.

- D429,049 to Licari, Aug. 1, 2000 — discloses a handled trash receptacle in which the sidewalls slope in slightly, devoid of the "flowing curves" that characterize the can depicted in the patents-at-issue.

These were found during a quick "knock-out" type search, so we are confident that a thorough prior art search would find many, many more examples of art that would make it sufficient for IQA to establish that its Trash Can does not infringe either of the patents-at-issue.

   **2.    IQA Does Not Infringe Umbra's Unregistered Trade Dress**

        To prevail on a trade dress infringement claim, Umbra, LLC would have to demonstrate all of

the following:

   a.    Its purported trade dress is inherently distinctive or has acquired distinctiveness through secondary meaning;

   b.    Its purported trade dress is nonfunctional; and

   c.    IQA's alleged imitation of the purported trade dress resulted in a likelihood of confusion in consumers' minds as to the source of the product.

*See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377 (2d Cir. 1997).  We believe that your client could probably establish the first element, given the "flowing curves" of the sidewalls. But as detailed in the previous section (and is obvious even in the photographs of the IQA Trash Can in your letter), the sidewalls of the IQA Trash Can are almost linear.  They do not contain the "flowing curves" that characterize the Garbino can.

        Even if your client could establish the first element of a trade dress claim, it could not establish the second and third elements.  As detailed in the previous section, certain features of the Garbino can are "highly functional."  None of those features could be considered in determining what constitutes protectible trade dress of the Garbino can.  Also, given the differences in the shape and appearance of the sidewalls of the two cans, and the limited number of sales of the IQA Trash Can (detailed in the next section), it is doubtful your client could establish a likelihood of confusion in consumers' minds as to the source of the IQA Trash Can.

Robert C. Atkinson, Esq.
February 25, 2009
Page 5

### 3.   **This Matter Is Economically Not Worth Pursuing**.

We have learned that IQA purchased 100,000 units of the Trash Can.  All of those cans were distributed to Target, Inc., which then sold them at retail.  Our client informs us that its profit was $0.04 per can, providing it a net profit of $4,000.00.  Our client also informs us that this was a one-time sale, and assured us that it does not intend to purchase or distribute any more of the cans.

Given these numbers, the fact that this was a one-time sale, the legal hurdles your client would need to overcome, and the fact that our client has no interest in paying even nuisance value to resolve these types of matters,  we believe this matter would not make economic sense to pursue.  We trust you and your client will agree, and that there will be no need for further correspondence.

Very truly yours,

Steven L. Reitenour

SLR/vef

cc:    Richard G. Morgan, Esq. (via email)